# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-81241-CIV-HURLEY/HOPKINS

CYNTHIA REYNOLDS, et al.,

    Plaintiffs,

vs.

PRONTO CORP., et al.,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon plaintiffs' motion for summary judgment [DE # 26]. For the reasons given below, the court will grant plaintiffs' motion and enter summary judgment on liability in favor of the plaintiffs.

### BACKGROUND

This is an action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA"). As required on a motion for summary judgment, the facts described below have been viewed in the light most favorable to defendants as the non-moving parties. *See Waters v. Miller*, 564 F.3d 1355, 1356 (11th Cir. 2009).

Plaintiffs Cynthia Reynolds, Clinton Walker, Sherell Hampton, Trika Maloney, and Noel Reyes worked for defendant Pronto Corporation, which is owned and managed by defendant John Romero. Among other lines of business, Pronto entered into a contract with Palm Beach County to provide paratransit services in connection with Palm Tran, the County's public transportation system. These services are intended to meet the needs of elderly, disabled, or otherwise disadvantaged travelers in Palm Beach County who might otherwise have difficulty using Palm Tran. *See* Mot. Ex. 1-B at 5. The

service to be provided by Pronto is described in the bid notice, the bid form completed by Pronto, and the notice informing Pronto that it had won the contract as "taxicab services." *See id.* at 6; Mot. Ex. 1-C at 7; Mot. Ex. 2.

Plaintiffs Reynolds, Walker, and Hampton were drivers for Pronto. Reynolds worked for Pronto for twenty weeks, beginning in March 2008. Reynolds Aff. at ¶ 2, 7. Hampton also worked for twenty weeks, beginning in April 2008. Hampton Aff. at ¶ 2, 7. Walker did not submit an affidavit, but plaintiff's initial disclosures claim that he worked for twenty-four weeks beginning February 2008. *See* DE # 22. Reynolds, Walker, and Hampton were each properly licensed to drive a vehicle for hire under the applicable provisions of the Palm Beach County Code. Reynolds Aff. at ¶ 4, Hampton Aff. at ¶ 4.

Plaintiff Maloney was hired in May 2008 as a dispatcher, and her employment ended in October 2008. Maloney Aff. at ¶ 2. Plaintiff Reyes was hired initially as a driver in December 2007, although he was unlicensed. When Reyes was unable to obtain a license, his duties were changed to those of a handyman. Reyes Aff. at ¶ 2, 3.

All plaintiffs allege that they worked in excess of forty hours each week, and that they were not paid one and one-half times their regular rate, as required by 29 U.S.C. § 207(a)(1). This lawsuit was filed on October 23, 2008, and plaintiffs filed the instant motion for summary judgment on April 14, 2009.

## JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the complaint asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in the Southern District of Florida.

## DISCUSSION

### A. *Standard on Motion for Summary Judgment*

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof

concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B.     *Motion for Summary Judgment*

#### 1.     *Employees/Independent Contractors*

Romero's answer[1] argues that plaintiffs were independent contractors, rather than "employees" within the meaning of the FLSA. Romero relies principally on the "Lease Agreements" defining the relationship between Pronto and plaintiffs, which refers to plaintiffs as "independent contractors," *see* Mot. Exs. 4, 5, and argues that the overtime-wage provisions of the FLSA do not apply to plaintiffs.

The statute defines "employee," but says simply that it generally means "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is statutorily defined as to "suffer or permit to work." 29 U.S.C. § 203(g). Cases decided by the Supreme Court and Eleventh Circuit Court of Appeals establish that in determining whether a person is "employed" by a business – rather than hired as an independent contractor – the court must examine the relationship in its entirety, giving weight to the "economic realities" of the situation over mere labels and formalities. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) (holding that "[w]here the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act"); *Antenor v. D & S Farms*, 88 F.3d 925, 930 (11th Cir.

---

[1] Defendants have not been represented by counsel until very recently. For this reason, clerk's default was entered against Pronto on February 6, 2009. *See* DE # 14. Romero filed a *pro se* answer on his own behalf, *see* DE # 3, and defense counsel appeared on May 5, 2009. *See* DE # 31. However, Romero has not filed any response in opposition to plaintiff's motion for summary judgment.

1996); *Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994) ("To determine whether an employer/employee relationship exists for purposes of federal welfare legislation we look . . . to the 'economic reality' of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer."). The factors to be considered include: (1) the degree of control exercised by the putative employer over the workers; (2) the workers' opportunity for profit and loss, and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; (5) the workers' rate and method of payment; (6) whether the employer maintained employment records; and (7) the extent to which the work is an integral part of the employer's business. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988).

The record evidence in the case demonstrates clearly that plaintiffs were employees rather than independent contractors. As to the drivers (Reynolds, Walker, and Hampton), the evidence shows that Pronto provided the vehicles used, insured the vehicles, and paid for the gasoline consumed. Each driver was given a daily schedule of passenger pick-ups, and additional pick-ups were distributed by Pronto's dispatcher. None of the drivers performed transportation services for any other individuals or companies, or earned income from any other source while employed by Pronto. Each driver was paid a flat amount weekly, and not per project or task, or in any way that would tend to suggest that the drivers were independent contractors rather than Pronto's employees. Under these circumstances, the drivers were clearly Pronto "employees" within the meaning of the FLSA, the contrary statements in their employment agreements not withstanding. *Cf. Sakasci v. Quicksilver Delivery Sys., Inc.*, 2007 WL 4218984 (M. D. Fla. 2007) (holding drivers for a pharmaceutical-delivery business "employees").

Similarly, Maloney and Reyes are clearly employees. During the time Maloney served as Pronto's dispatcher, she performed no other work for income. Romero controlled her hours of work and her wages, and did not supervise the drivers or any other Pronto employee. Likewise, Reyes' duties (after he was demoted from his position as a driver) were relatively simple and did not require substantial skill or experience. His hours of work and wages were controlled by Romero, and the tools he used on the job were provided by Pronto. The circumstances under which Maloney and Reyes performed their duties demonstrate that they are employees, rather than independent contractors.

   2.   *Taxicab Exemption*

Although the issue is not raised by Romero, the court must confront whether the paratransit business operated by Pronto qualifies for the FLSA's taxicab exemption. The FLSA exempts from its overtime pay provisions "any driver employed by an employer engaged in the business of operating taxicabs." 29 U.S.C. § 213(b)(17). This exemption, like all FLSA exemptions, is to be construed narrowly in light of the statute's remedial purpose. *See Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1157 (11th Cir. 2008). The employer bears the burden to prove the application of the exemption by "clear and affirmative evidence." *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992). Because the parties dispute not the factual details of Pronto's business, but only its proper classification under the statute, the determination of the exemption's applicability is a question of law for the court. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 869 (7th Cir. 2008); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006).

The FLSA does not further define "the business of operating taxicabs," but the Department of Labor's field operations handbook discusses frequently-present elements: "*'Business of operating*

6

*taxicabs*.' The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local transportation needs of the community. It may include such occasional and unscheduled trips to and from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected." *Abel v. Southern Shuttle Services, Inc.*, 301 Fed. App'x 856, 859 (11th Cir. 2008) (unpublished op.) (quoting Dept. of Labor, Wage and Hour Div., Field Operations Handbook § 24h01). This definition is not entitled to *Chevron* deference, but may be persuasive. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1275 n.65 (11th Cir. 2008); *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1255 (11th Cir. 2001).

In *Abel*, the district court had concluded that an airport shuttle operator fell within the taxicab exemption and entered summary judgment in its favor. The Court of Appeals vacated and remanded. The Eleventh Circuit noted that an airport shuttle is not included in the plain meaning of the word "taxicabs," and that the defendant business did not refer to itself as a taxicab operator or to its vehicles as taxicabs. 301 Fed. App'x at 859. The court further reasoned that, unlike the hired vehicles commonly referred to as taxicabs, the vans used as airport shuttles could carry nine or ten passengers each, and that either the start or the end of a trip on the shuttle was always an airport. *Id.* at 859-60. Finally, the court observed that the airport shuttle operator did not demonstrate that it had complied with the relevant municipal regulations applicable to taxicab operators, and that its shuttle vans were not equipped with taximeters. *Id.* at 860-61. Thus the court found that the exemption, construed narrowly, did not include the airport shuttle operator. *Id.* at 861. Conducting a similar analysis, courts in this district have refused to extend the taxicab exemption to limousine services. *See Powell v. Carey*

*Int'l, Inc.*, 483 F. Supp. 2d 1168, 1178-79 (S. D. Fla. 2007); *Rossi v. Associated Limousine Services, Inc.*, 438 F. Supp. 2d 1354, 1363-64 (S. D. Fla. 2006).

The question whether the taxicab exemption encompasses Pronto's activities in this case is a close one. Unlike the airport shuttle operator in *Abel*, Pronto uses standard-sized vehicles typical of traditional taxicab services, and Pronto refers to itself in its employment agreements with its drivers as "Pronto Taxi Corp." Mot. Exs. 4, 5. Also unlike the *Abel* defendant, the Pronto drivers transported passengers along unplanned routes without any fixed starting point or destination. As mentioned *supra*, Palm Beach County referred to the services to be provided by Pronto as "taxicab" services in all relevant documents.

On the other hand, many (although not all) of the paratransit passenger trips were scheduled in advance. As a contractor for Palm Beach County, Pronto did not serve the general public, but a particular segment of the population believed to have difficulty using Palm Tran's standard transportation services. As in *Abel*, the drivers did not rely on meters in their vehicles to determine customers' fares, and drivers were not paid according to mileage. There is no evidence that drivers routinely accepted tips from customers.

Two district court cases have considered and rejected the arguments of similar businesses that the taxicab exemption applies to the transportation of the mobility-impaired. In *Mascol v. E&L Transportation, Inc.*, 387 F. Supp. 2d 87 (E.D.N.Y. 2005), the court held the exemption inapplicable to a business providing "passenger transportation services for mobility-limited passengers in the city of New York . . . ." *Id.* at 91. The court pointed out that the defendants' vehicles were not licensed as taxicabs; that the most of the business was paid for by the State of New York; that the vehicles were not metered; and that the rates were predetermined. *Id.* at 98. The court found the drivers' practice

8

of accepting tips from passengers and their paratransit licenses insufficient to transform the service into one covered by the taxicab exemption. *Id.* at 99.

The *Mascol* court discussed *Herman v. Brewah Cab, Inc.*, 992 F. Supp. 1054 (E. D. Wis. 1998). In *Herman*, the court declined to apply the taxicab exemption to a company "engaged in the business of transporting elderly persons and persons with handicaps in specialized motor vehicles." *Id.* at 1056. Like Pronto, the defendant company in *Herman* contracted with the State to provide transportation services to those with limited mobility. *Id.* at 1057. The exemption was held inapplicable even though the fares were determined by mileage, and even though the drivers did not travel along fixed routes. *Id.* at 1056. The court noted that the company's phone-book advertisement was listed under the heading of "transportation services for the disabled," not "taxicabs." *Id.* at 1057. Finally, the court emphasized that the service provided by the defendants was largely subsidized by the government, in contrast to a typical taxicab operation which receives the entire fare from the passenger. *Id.* at 1060.

Following the decision in *Herman*, the Department of Labor issued an opinion letter construing the taxicab exemption. *See* Dept. of Labor Op. Letter, 1998 WL 852774 (April 17, 1998). In response to an inquiry by a company providing passenger transportation services for mobility-limited passengers in Illinois, the letter opined that "it is the opinion of the Division that the drivers of the vehicles used to transport mobility-limited passengers would not qualify for the 13(b)(17) [taxicab] exemption." The letter reasoned that "[t]he ordinary meaning of [the term 'taxicab'] contemplates vehicles that are offered for hire to the general public on city streets," and cited *Herman* approvingly. This opinion letter, like the Department of Labor handbook quoted *supra*, is entitled to *Skidmore* deference – i.e., deference to the extent of its persuasiveness. *See Christensen v. Harris County*, 529 U.S. 576, 587

(2000).

Although substantial factors weigh on both sides of the issue, the court finds most persuasive the rule requiring narrow construction of FLSA exemptions, the decisions in *Mascol* and *Herman*, and the opinion letter drafted by the Department of Labor. Pronto's paratransit service, while incorporating some elements of a traditional taxicab operation, is not "the business of operating taxicabs" as that phrase is used in 29 U.S.C. § 213(b)(17). Accordingly, the court finds the taxicab exemption inapplicable.

3. *Motor Carrier Exemption*

Under its so-called "motor carrier exemption," the FLSA also exempts from its overtime provisions employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). The court has less difficulty concluding that this exemption is inapplicable.

The motor carrier exemption applies only to those employees who (1) are employed by carriers whose transportation of passengers or property is subject to the jurisdiction of the Secretary of Labor under the Motor Carrier Act; and (2) engage in activities directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce. *See Baez v. Wells Fargo Armored Service Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991). The uncontroverted evidence in this case clearly establishes that Pronto drivers transported customers only within the state of Florida (indeed, only within Palm Beach County). The motor carrier exemption is therefore inapplicable. *Cf. Walters v. American Coach Lines of Miami, Inc.*, 569 F. Supp. 2d 1270, 1281-86 (S. D. Fla. 2008); *DeMaria v. Ryan P. Relocator Co.*, 512 F. Supp. 2d 1249, 1254 (S. D. Fla. 2007).

Order Granting Plaintiffs' Motion for Summary Judgment
Reynolds et al. v. Pronto Corp. et al.
Case No. 08-81241-CIV-HURLEY/HOPKINS

## CONCLUSION

For the foregoing reasons, the court finds that no genuine issue of material fact exists regarding the plaintiffs' status as employees, or the applicability of either the taxicab or motor carrier exemptions. Plaintiffs' motion for summary judgment will therefore be granted, and judgment entered in favor of the plaintiffs on liability.

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiffs' motion for summary judgment [DE # 26] is **GRANTED**.

2. Summary judgment is granted in favor of the plaintiffs on liability.

**DONE** and **SIGNED** in Chambers in West Palm Beach, Florida, this 10th day of July, 2009.

_____
Daniel T. K. Hurley
U.S. District Judge

*Copies provided to counsel of record*